Good morning, your honors. My name is James Maynier. I'm of counsel to the Sacramento law firm of Cook Brown, and we are the attorneys of record for the appellant in this case. The central issue in this case, as you know from the briefs, is the NLRB's failure to support their allegation of relevancy and necessity, as alleged, concerning the production of addresses and telephone numbers. As I understand, the longstanding rule under the NLRB with respect to this is that there is a presumption in favor of requiring that these be provided during the course of collective bargaining, and there are exceptions to that. But absent showing the exception, the presumption applies. Am I misunderstanding the law? I believe you are, your honor, with all due respect. No, help me out there. And what we have to do is we have to examine the cases that have been cited by the NLRB in their support. The black letter law is as you have just stated it, your honor. However, if you examine these cases that they're relying on, there is not a single case that they have cited that the appellant courts have approved without the finding of substantial evidence that telephone numbers and names, primarily names, there's only a couple of telephone numbers, telephone number cases, are relevant and necessary, or there has been a concession by the employer in the case that these names are relevant and necessary, but they go on to other defenses. Again, you can correct me if I'm wrong. My sense is, as I read those NLRB cases, that it's built into the presumption that the union may well want to be in contact with members of the bargaining unit as they go through the collective bargaining process in order to figure out what bargaining positions they should adopt. I agree with you, your honor, that the need to communicate is what has been described as the part of the essence of the collective bargaining. That, that is — So I'm not sure that they need to establish that separately in every case. No, no. I think we just assume that that's — No, your honor. Excuse me. I didn't mean to interrupt. No, go ahead. No, your honor. The issue here, that issue should not be confused with names and telephone numbers as the only way to communicate with the employees. The cases that have been cited concerning names — excuse me — exclude names. Names always have to be provided, and River Oak did provide those names. But the addresses and telephone numbers have only been provided when there has been a showing of relevance and necessity. And in those cases — Let me interrupt you. Yes, sir. No matter how necessary the union thinks it is to find out where their members are living and what their phone numbers are — Right. Putting to one side the question of whether there aren't other means to persuade their members to keep contact with the union. Put that to one side. With a contract, the collective bargaining agreement between the union and the company specifically provides that that information will be kept confidential, except when there's hire, fire or demotion. Right. Why doesn't that contract override whatever relevancy or necessity the law might manufacture? Your honor, you have anticipated my next point. That's exactly the point that we've attempted to make to the board, that in this case, there is an expectation of privacy written into the contract. So let's forget about whether there's an expectation of privacy. The contract provides that the information regarding the addresses and phone numbers will be confidential and will not be given to anybody except by the employer under certain circumstances. That's correct, Your Honor. With one exception. Hire, fire and change of status. Right? And when they're first hired, that's correct. I say hire, fire or change of status. If that's the contract between the union and the employer, what business is it of the NLRB to change the contract? Well, I would agree with you, Your Honor. I agree with you totally. Keep that in mind, counsel, for the government. And could you help me by pointing me to the specific language in the collective bargaining agreement that so provides, just so I can make sure I understand precisely how that language operates? Your Honor, I do not have the contract in front of me. I cannot do that, but my brief. Can you do it? Can you get your hands on it to repair for a brief? Your Honor, may I refer to my brief? Yes. You might take a look at section 11a and 11e and 11g. Your Honor, would you prefer I get the contract? I don't have the contract with me at the table. Well, you know, why don't you we'll give you enough time to do that on rebuttal so that you can make sure that you can sort of isolate the language and then you can do it. Because I have isolated the language in the brief and specifically pointed. If you want to cite the brief, I've got the collective bargaining agreement in front of me and I want to know exactly what language it is you're relying on. But reading out of the brief is fine with me. Okay. Do you want me to do that now? Sure, sure. Yeah, yeah, I've got it in front of you. Absolutely. Okay. I'm at page 20, Your Honor, and I'm going over to page 22. Well, I start with section 11a. I'm at the bottom of the page 21 of the brief. And what is it in section A that has the consequence that you're arguing for? Well, that lists the people who have access who do not need the employee's written consent. And the SEIU, the union, is not included in that group. And it includes the employee, the president, chief executive officer, the human resource director, and other human resource staff. Yeah, I'm reading the language. It says access to the personnel file is limited to the employee, the employee supervisor, da, da, da, da, da. Now, there's going to be a lot in that personnel file that's more than home address and phone numbers, correct? That's correct. Is there anything in here? But later on. Let me ask you to make sure we're on the same page. Is there anything in here that specifically protects not the file, but address and phone numbers? There is a specific reference to confidential. It is a specific reference to addresses and telephone numbers and other confidential information. Now, where is that? Okay. It's in paragraph 11G, counsel. Okay. 11G, Your Honor. And where is it in your brief? It's at the bottom of page 25. And it says are any other confidential matters shall be referred to. And then there's also the provision that says the employer will respect the right of privacy of the employees. And it's our view that read as a whole, when you read the contract as a whole, that creates this right of the expectation that their home addresses and telephone numbers will be kept confidential and that they can have it, people who want it can get the written consent of those employees. And this bargaining unit is only 80 members. Only how many? Eighty. Eighty. And the other cases talk in terms of thousands of employees spread all over the, spread over many locations. And we just don't have that. There's no evidence of that in this case. There's no evidence in this case that was presented by the NLRB that they were having any difficulty communicating with the employees. Okay. Let's hear from the other side. You've used up your time, but we will make sure to give you a chance to respond. Okay. Thank you, sir. I said you've used up your time. I think the accurate way to state that is we have used up your time. Please, the Court. In this case, maybe I should go right to Judge B's question. That paragraph, G, says that the employer respects the privacy of its employees and survives to ensure a confidentiality. In that sentence, any calls regarding home address and telephone numbers or any other confidential information shall be referred to the human resources director or his or her designee. And it also, I was, what I was getting to is that the information is not to be improperly released. We would maintain that this information pursuant to the statute. Where does it say improperly? In G. In G, appendix page 148 to 149. All right. It's not to be improperly released either to the agency or to external sources. Right. Now, what you're talking about is that there are elements of interpretation. Are we interpreting the contract as to what is improperly? The board is interpreting the contract as to whether this is a clear and unmistakable waiver of the right to this information that is necessary to communicate with these employees regarding the collective bargaining relationship. So the board is in the position of saying what is a proper release or not a proper release because of its expertise in collective bargaining and industrial policy. Whether this language is a clear and mistakable waiver of statutory rights, that's the question. That was the question before the board, whether there was any language in this contract that represented a clear and mistakable waiver of the statutory right of the union to obtain such. And do we know that the standard for getting out from under the presumption that these have to be given over is that it has to be a, quote, clear and unmistakable waiver? Correct, Your Honor. I don't think that's disputed. Okay. If that's in dispute, I guess we'll hear about it. But for the moment, I'll operate on the assumption that we have to see this, paragraph G, as a clear and unmistakable waiver of the right of the union to get their hands on the names, telephone numbers, addresses of everybody in the bargaining unit. Correct, Your Honor. And I don't believe the Center has ever cited a case where such basic information as addresses and telephone numbers has been withheld. Why do you think that there is a paragraph 2E in this contract saying that on higher fire or status change, addresses and phone numbers, addresses, not phone numbers, will be given out? If interpreting the contract as a whole, and if you are correct that there is an absolute presumption that the union has a right to these telephone numbers at any time, right? Well, this is in the course of a ---- And that this is not a clear waiver of that, quote, statutory right under Section 8A, I guess it is, 8A1 and 8A5. Why is there a provision allowing on higher fire and change of status for addresses to be given? I don't think that's such an unusual provision. I had a case ---- I mean, no, no, but use contract interpretation language and thought. If we're interpreting the contract as a whole, and we have two paragraphs, 11A and 11G, saying this information is private and is not to be improperly released, and we have a paragraph 2E that says it can be released on higher fire or change of status. Doesn't that define what is properly released? You can release it on higher fire and change of status. Well ---- What you want me to do is to release it at any time because we've got this right under the National Labor Relations Policy, and then 2E is superfluous. No, Your Honor. What I'm saying is that this is not a contract interpretation case. This is a case where the union ---- Why isn't it a contract interpretation case? Because the union sought the information pursuant to case law that says it's entitled to this information as a matter of course, without any showing of any specialized need for the information, that the contract that the ---- if the parties had chosen to have a waiver, had agreed to a waiver of that contract, certainly they could have put in much clearer language than this. They could have said, notwithstanding any rights that the union has pursuant to the National Labor Relations Act, this access to information is the union's total entitlement. I've got a question about this sentence at the very end of 11G, the sentence that begins, Any calls, documents, or questions concerning reference, credit check, blah, blah, blah, home addresses, telephone numbers, location, other confidential matters. And then it says, Shall be referred only to the human resources director or his or her designee. It doesn't say what the human resources director is then supposed to do. It just says, take those questions to that person. Correct, Your Honor. And presumably she ---- It doesn't say that that person may not release them to the union at the time they were doing collective bargaining agreement in conformance with the presumption. Correct, Your Honor. That's how I read it as well. It says, call the human resources director. He or she will know what to do. That's correct, Your Honor. That's how I read that as well. And I don't see anyway. Certainly the center didn't refer to any bargaining history that would suggest a broad interpretation of this language as a waiver of statutory rights. Where do you get the waiver? I understand waiver to be a knowing voluntary action by a person knowing that he has a right and waiving that right. Correct, Your Honor. Is that what you understand by waiver? Yes. All right. And the case is to say that the only way that you can stop the union from finding out addresses and telephone numbers is to have affirmative proof before the board that the union waived that right. Yes. Are those cases in your brief? I don't believe so, because I don't believe the waiver issue was. But you're basing your argument on waiver. I would cite you to. And now you're telling me you didn't cite any cases on waiver. Because I don't believe that the center has made that much of a case for waiver. Well, but if you're telling us that there must be a waiver in order to abandon the right which the board bestows on the union. Right? Tell me the case that says it. Well, I would refer you, I believe, to Stanford, which is NLRBV Leland Stanford, which is a case some years ago. But if that may be, I believe that's only a period. Junior University Farm, is that Stanford? No, Leland Stanford Junior University. I'm acquainted with it. I spent seven years there. Well, that was my case, too, Your Honor. And that's an 80s case. An 80s case. Yes. All right. And that had to do with unit. The union in that case was seeking information regarding non-unit employees. All right. No, but you take the position that we shouldn't be looking at this as a contract. Well, but Metropolitan Edison, the Supreme Court case, as well, I would cite to the court. As I understand your position, we shouldn't be looking at it as a contract interpretation case, even though there's a collective bargaining agreement. That's not how the National Labor Relations Board looks at it. The National Labor Relations Board takes the position that they're entitled, the union's entitled to addresses and home phone numbers, unless an exception has been created. And the exception has to be by a voluntary waiver of the union of the right. That's one of the exceptions. And that this contract. Oh, it's only one of the exceptions. How about an exception taken out of the language of the contract? Well, that's what I was about to say. And this contract does not establish a clear and an unmistakable waiver of the union's right to such basic information as addresses and telephone numbers that it needs to communicate with employees. How about this language? All personnel records are confidential. Access to the personnel file is limited to. It doesn't say the union. It doesn't include the union there. And then it goes on to say that any calls about this will be given to human resources director, which is one of the persons that in the previous paragraph has a right to this information. But I would venture that every employer has such policies. Limiting. The one thing that doesn't appear in this is that the union is entitled to this information. That wasn't bargained for by the union. No, but the union had the statutory right to the information. It didn't have to bargain. It has a statutory right under 8A1 and 8A5 if you say that the law interprets those two sections as giving them a statutory right. Correct, Your Honor. But the board has, I would submit, has the discretion to adopt bright-line rules that promote collective bargaining rather than obstruct bargaining. And such a rule as requiring parties to turn over information like telephone numbers and addresses is fundamental to that policy. Even if the parties, by their delegates, bargain otherwise? Well, I don't believe they did so here. That's where the difference is. Okay.  Thank you. You may want to bring that CBA up to the podium with you. Excuse me, Your Honor, I have a little difficulty in walking. Not to worry. We'll take whatever time you need. Okay. First, let me address the issue that I started on before we got off onto the contract issue. I believe that counsel has misstated the rule concerning disclosure of names, excuse me, addresses and telephone numbers as a matter of right. They first have all the cases, all the appellant cases have relied upon the providing of substantial evidence in order to require the disclosure of names. Now, excuse me, I keep saying names. It's telephone numbers and addresses. There's not a single case cited that the appellant court has said to the NLRB, you just simply can make the allegation and don't need to support that allegation. I think I read the NLRB cases on this point differently from the way you do, but let me check. Okay. The way I read them is when the union is in a collective bargaining situation. Right. Not all the time. No, no. But when they are engaged in collective bargaining. Right. There is a presumption without the necessity to adduce specific proof that they do need the addresses and telephone numbers. Am I misstating the case law? Yes, I believe you are, Your Honor. Okay. that at any time if they can request information concerning wages, hours, and working conditions that will assist them in bargaining or discharging their obligation as the collective bargaining agent. That's absolutely clear. And that's because it goes to the essence of the bargaining relationship. And the courts have held that they do not need to make any type of special showing. However, however, while there may be dicta in some of the cases, there has been no case cited that extends this proposition to names and, there I go again, addresses and telephone numbers. You speak of that proposition as being. The proposition that the union needs to make no special showing as to necessity and relevance for those things that are of the essence of the collective bargaining obligation. That would override the contractual provision. No, sir, it does not. I'll get to that in just a minute. Why wouldn't it? Why don't you get to it now? You don't have much time. Well, because one thing is that they can bargain that right away. You know, they can bargain the right away to those things that are of the essence. Here, since names and telephone, addresses and telephone numbers are not of the essence, there's been no court holding that. There's been some dicta, but no court holding that. It's our belief that there needs to be a waiver on the part of the employee when there's contractual language that establishes a confidentiality relationship. And those, there are cases I have cited in the brief that go to that. I believe there's language in Rett Law that says, that talks about confidentiality. Counsel cited Detroit Edison. Detroit Edison is a seminal case on confidentiality versus contract. And where it is found that there is an expectation of privacy, that then there is a balancing test. The time is running. We're taking you over, but because at the moment I'm not yet convinced of your position, I don't want to cut you off before you've had a chance to answer the questions. I'm just reading, and I think I could read this in quite a number of other NLRB cases. I'm reading from LaGloria Oil, but there are a whole bunch of them. I'll just read to you what the NLRB says. The complaint alleges, and Respondent's answer admits, that the union requested the names, addresses and telephone numbers of the unit employees and that the Respondent refused to furnish this information to the union. Although the Respondent's answer denies that this information is necessary and relevant to the union's duties as the exclusive bargaining representative of the unit employees, it is well established that such information is presumptively relevant and must be furnished on request. The Respondent has not asserted any basis for rebutting the presumption, apart from its argument rejected above, that the union's certification is invalid. That sounds as though, to me, if you're in a collective bargaining situation, you, the union, get it, unless something can be established as a reason for exception. You do not have to say, here is why it's necessary. It is assumed to be necessary, which is what LaGloria just did. First of all, that's an NLRB case. Yes. It's not an appellant case. And I believe that in that case there was substantial evidence. There was evidence. There's certainly none discussed in the opinion.  All right. But what I'm saying to you, Your Honor, and I think what is important is, is that the appellant cases have required, have first found that there was substantial evidence supporting the direction of the board to provide the necessity to provide this information. And it goes through several of those cases, such as Prudential and United, all of those cases. But there is no appellant court decision that says that the addresses and telephone numbers are per se relevant and necessary. Well, there's no NLRB case that says that either. They say that presumptively, not per se. Well, no. But what that means, the presumption means that you don't have to present evidence to prove the point. You don't independently have to prove necessity. One last question. And that is, assume for the sake of argument, I don't ask you to concede it because you clearly don't want to and you don't need to in this setting. Assume that the presumption applies. And the question now is, what takes it out of that? And there's a very plausible argument that, I think it's a convincing argument, that a CBA can take it out of the presumption. The question then is whether this CBA takes it out of the presumption. The question is, how do you read this language in 11e that starts out by saying information is not to be improperly released? And then the next sentence says, any calls asking for various things, including addresses and phone numbers, should be referred only to the human resources director. Well, I believe that. Does that mean the human resources director is not supposed to release them when the union asks for that information in the course of a collective bargaining situation? Well, I believe that there are, in addition to the collective bargaining agreement, there's just the overall right of privacy. No, no. I'm asking you a very different question. I'm asking the specific operation of this language. I believe that she should look at the, he or she should look at the collective bargaining agreement, what the employee's expectation of privacy is. Yeah, I know. Don't avoid my question. I'm looking at the agreement. Okay. I want you to tell me how that language instructs the human resources director not to release the addresses and phone numbers when the union asks for them in the course of a collective bargaining situation. That particular, that language in and by itself does not instruct. It goes to the, that's the role that the human resource director will use. She'll look at the collective bargaining agreement. She'll. And where else in the collective bargaining agreement will she look to discover that she's not supposed to release the addresses and the phone numbers? Because it specifically states to who she can release the information to. No, it specifically states earlier who can she release the personnel file to. The personnel file contains a lot of stuff. Yeah. But the telephone numbers and addresses are in that personnel file. Well, of course. And are to be treated as confidential. Well, would you agree. It says they're not supposed to release confidential information. Telephone numbers and addresses and other confidential information. Well, would you agree that this collective bargaining agreement was written in the So that any intelligent lawyer on either side would know you've got to be fairly explicit if you're not going to have to give it up. Well, first of all, that assumes that lawyers drafted this, this agreement. I assume intelligent lawyers were both. Well, okay. But even that a lawyer drafted it. Your Honor, I believe that there's absolutely clear, that it's clear that they believe they were, that the parties were negotiating the confidentiality and that the union reserved the right to receive the names and addresses of new hires so they could contact them. And if they had wanted something else, they could have bargained for that. And I do not agree that in this particular instance, when you're dealing with a right of privacy, that there is a presumption of right to that. There has to be a balancing test. And that balancing test was not provided. Okay. Thank you. I'm sorry for taking you over. If I could help you, Your Honor, I'm more than happy to stay. Thank you very much. Thanks both sides for their helpful arguments in this case. River Oak Center for Children v. NLRB has now submitted for decisions. Is it okay if we need a break before we do the next case? Okay. Last case on the argument calendar.
judges: Noonan, W. Fletcher, Bea